IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michael Smith, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Carolyn W. Colvin, Acting )<br>Commissioner of Social Security,[1] )<br>)<br>Defendant. )<br>_____ ) | Civil Action No.  6:12-889-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on August 8, 2007, alleging that he became unable to work on April 30, 2007.  The applications were denied initially and on reconsideration by the Social Security Administration.  On July 17, 2008, the plaintiff

---

[1]  Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this action.

[2]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

requested a hearing. The plaintiff appeared and testified at a hearing before the administrative law judge ("ALJ") on July 31, 2009. A supplemental hearing was held before the ALJ on January 20, 2010, at which time both the plaintiff and Dr. Charlie Edwards, an impartial vocational expert, testified. The ALJ considered the case *de novo* and on July 9, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended, prior to June 19, 2009, but became disabled on that date and remained disabled through the date of the ALJ's decision. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on February 1, 2012. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

(2)    The claimant has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R §§ 404.1571 *et seq* and 416.971, *et seq.*).

(3)    Since the alleged onset date of disability, April 30, 2007, the claimant has had the following severe impairments: degenerative disc disease of the lumbar spine (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)    Since the alleged onset date of disability, April 30, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that prior to June 19, 2009, the date the

2

claimant became disabled, the claimant had the residual functional capacity to perform "light" work, as defined in 20 C.F.R. §§ 404.1567 and 416.967(a), except that he was to avoid more than frequent balancing, kneeling, crouching or crawling; he was to avoid more than occasional stooping or climbing of stairs or ramps; and he was to avoid concentrated exposure to hazards or any climbing of ropes, ladders or scaffolds.

(6)    After careful consideration of the entire record, the undersigned finds that beginning on June 19, 2009, the claimant has the residual functional capacity to perform "sedentary" work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that, due to the effects of chronic pain, he could be expected to miss more than three days of work per month, on average.

(7)    Prior to June 19, 2009, the claimant was able to perform his past relevant work as a car salesman. Since June 19, 2009, he has been unable to perform any of his past relevant work (20 C.F.R. 404.1565 and 416.965)

(8)    Prior to the established disability onset date, the claimant was a younger individual aged 18-44. The claimant's age category has not changed since the established disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(9)    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964)).

(10)    The claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(11)    Prior to June 19, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national

3

economy that the claimant could have performed (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969a).

(12)     Beginning on June 19, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c) and 416.966)

(13)     The claimant was not disabled prior to June 19, 2009, but became disabled on that date and has continued to be disabled  through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g).

(14)     The claimant was not under a disability, within the meaning of the Social Security Act, at any time through March 31, 2009, the date last insured (20 C.F.R. §§ 404.315(a) and 404.320(b)).

(15)     Because of the likelihood of medical improvement with appropriate continuing care, the undersigned hereby orders the appropriate component to diary this case for a continuing disability review in 24 months from the date of this decision, in order to determine at that time whether the claimant remains disabled.

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."   42 U.S.C. § 423(a).   "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

5

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 36 years old on April 30, 2007, his alleged disability onset date. He completed the seventh grade and later obtained a GED (Tr. 45). The plaintiff had past relevant work experience as a car salesman (Tr. 31, 90, 145, 177-80).

In February 2007, the plaintiff presented to Dr. Steven Bailes, a family physician, with complaints of back pain after falling off a ladder a few weeks earlier. The plaintiff reported that he had been going to a chiropractor, but that he wanted something for his pain symptoms. Upon physical examination, Dr. Bailes reported that the plaintiff had

6

full range of motion and normal strength and tone.  Dr. Bailes prescribed Ultram for the plaintiff's pain symptoms (Tr. 259-60).

In March 2007, the plaintiff was treated in the emergency room for low back pain and right side pain.  X-rays of the plaintiff's lower back and pelvis were unremarkable. The plaintiff was given prescriptions for tramadol (Ultram) and cyclobenzaprine (Tr. 242-50).

On June 20, 2007, the plaintiff presented to Dr. Bailes with complaints of right hip pain that radiated down his right leg.  A physical examination was unremarkable (Tr. 261).  Dr. Bailes diagnosed the plaintiff with sciatica and recommended that he obtain an MRI (Tr. 261).  On June 28, 2007, Dr. Bailes noted that the plaintiff had not yet had his MRI because he did not have money to pay for it and his parents were out of town.  He complained of right leg pain and had severely reduced extension and flexion.  The plaintiff was walking with a cane.  Dr. Bailes prescribed Lortab and Norflex (Tr. 262-63).

In July 2007, an MRI of the plaintiff's lower back revealed mild multilevel degenerative disc disease; canal and bilateral neural foraminal encroachment at the L4-5 level; posterior left paracentral focal disc protrusion at the L2-3 level without nerve root compression; and tiny multilevel Schmorl's nodes (Tr. 253-54).  Later that month, the plaintiff told Dr. Bailes that he was experiencing severe pain and numbness in his right leg. Upon physical examination, Dr. Bailes noted that the plaintiff was walking with a cane and that he had severely reduced extension and flexion in his spine.  Dr. Bailes diagnosed the plaintiff with back pain and indicated that his status was "worsening."  He recommended that the plaintiff see a neurosurgeon (Tr. 264).

In late July 2007, the plaintiff saw Dr. Flaundry of Spartanburg Neurosurgical for evaluation of his low back and right leg pain.  The plaintiff reported that he had experienced "episodic" discomfort in his lower back for two to three years; that he had an episode of rather severe low back pain six to seven months ago, which never really resolved; and that he had developed radicular pain extending down his right leg about three

months ago.  At the time of the examination, the plaintiff reported that he was experiencing "mild low back pain." (Tr. 269-71).  Upon physical examination, it was noted that the plaintiff was able to stand independently with a normal station; his gait was deliberate and slightly antalgic; he had moderate restriction of movement in his lower back with the most discomfort occurring with flexion and extension; he had trace amount of weakness in his right ankle and toe; and his sensation was grossly intact (Tr. 270).  Based on the neurological examination, the plaintiff was diagnosed with right paracentral herniated nucleus pulposus at L4-5 with extruded disc material and neural compression and right lower extremity radiculopathy.  Treatment options were discussed with the plaintiff, which included the possibility of undergoing back surgery to remove the herniated nucleus puposus (Tr. 271).

In October 2007, Dr. Seham El-Ibiary, a State agency reviewing physician, opined that the plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday (Tr. 276).  Dr. El-Ibiary further opined that the plaintiff could frequently climb ramps and stairs, balance, kneel, crouch, and crawl and could occasionally stoop and climb ladders, ropes, and scaffolds (Tr. 277).

In October 2007, Dr. Debra Price, a State agency reviewing psychologist, completed a Psychiatric Review Technique Form, opining that the plaintiff did not have a severe mental impairment (Tr. 283).  Dr. Prince opined that the plaintiff had mild restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 293).

In November 2007, the plaintiff presented to Dr. Bailes with complaints of lower backache and right leg pain.  Dr. Bailes indicated that the plaintiff's back pain was

8

most likely due to degenerative disc disease (Tr. 319). Dr. Bailes prescribed Lortab for the plaintiff's pain symptoms (Tr. 320).

In February 2008, the plaintiff again presented to Dr. Bailes with complaints of lower backache and right leg pain. A physical examination was largely unremarkable, except for moderately reduced extension and flexion in the plaintiff's back (Tr. 326).

In March 2008, Dr. Dale Van Slooten, a State agency reviewing physician, opined that the plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. Dr. Van Slooten further opined that the plaintiff could frequently climb ramps and stairs, balance, kneel, crouch, and crawl and could occasionally stoop and climb ladders, ropes, and scaffolds (Tr. 329, 330). Dr. Van Slooten also opined that the plaintiff should avoid concentrated exposure to hazards, such as machinery and heights (Tr. 332).

In May 2008, the plaintiff presented to Dr. Bailes for a follow-up evaluation of his lower backache. The plaintiff reported that he did not have any significant problems with limitation of motion, strength, or sensation in his extremities. He rated his pain as 8 out of 10. A physical examination was largely unremarkable. Dr. Bailes prescribed Lortab for the plaintiff's lumbar disc disease and Valium for anxiety (Tr. 367-68).

On May 15, 2008, David Massey, Ph.D., conducted a consultative psychological evaluation of the plaintiff (Tr. 337-40). The plaintiff reported that he had never attended any mental health counseling during his adult life. The plaintiff reported that he experienced some anxiety that comes and goes and some panic attacks every now and then (Tr. 338). Upon mental status examination, Dr. Massey noted that the plaintiff was polite and cooperative; he demonstrated good social skills; he had good eye contact during the interview; his speech was normal; and there was no evidence of memory or concentration problems (Tr. 337). The plaintiff also reported that his activities of daily living

included watching television, caring for personal hygiene, and going to church occasionally, but that he was limited from performing other activities of daily living due to his back pain (Tr. 339). Based on his examination, Dr. Massey diagnosed the plaintiff with anxiety disorder, not otherwise specified, and depressive disorder, not otherwise specified (Tr. 339).

A Psychiatric Review Technique Form was completed by Lisa Varner, Ph.D, a State agency psychologist, on June 6, 2008 (Tr. 341-54). She indicated that the plaintiff's impairments caused moderate restriction of daily activities, moderate difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence, and pace. She found no episodes of decompensation. Dr. Varner also completed a Mental Residual Functional Capacity Assessment. Dr. Varner stated that the plaintiff's "symptoms and impairments are severe but would not preclude the performance of simple, repetitive work tasks in a setting that does not require on-going interaction with the public" (Tr. 355-58).

In July 2008, Dr. Bailes indicated that the plaintiff had severe degenerative disc disease and that he was sending him to a neurosurgeon for evaluation. Dr. Bailes indicated that the plaintiff's condition was going to cut back significantly on how much he has been able to or will be able to earn in the foreseeable future (Tr. 359).

In late July 2008, the plaintiff presented to Dr. Bailes for refills of his medication and with complaints of allergy problems. The plaintiff reported that he felt as if his ear had been stopped up for a month (Tr. 365-66). A physical examination was unremarkable (Tr. 365).

On August 28, 2008, Dr. Bailes completed a questionnaire regarding the plaintiff's degenerative disc disease. Dr. Bailes opined that the plaintiff was unable to perform sedentary work on a sustained basis for an 8-hour day, 5-day work week as a result of his degenerative disc disease (Tr. 360-61). He further opined that the plaintiff could not perform activities that required more than occasional fine manipulation; that he

could not stand and/or walk for more than a few minutes during the workday; that he must avoid stooping; that he would have to rest away from the work station for significantly more than hour during the working portion of the day; and that he would probably have to miss more than 3 days of work per month (Tr. 360).

In October 2008, the plaintiff presented to Dr. Bailes for refills of his medication. A physical examination was unremarkable, except for moderately reduced extension and flexion in the plaintiff's back (Tr. 363).

In December 2008, the plaintiff presented to Dr. Bailes with complaints of lower backache, leg pain, and depression. At that time, the plaintiff reported that he was having a lot of difficulties with ambulation, showers, and getting around. A physical examination revealed tender lumbar spinous processes, moderately reduced extension of the back, and severely reduced flexion of the back. Dr. Bailes indicated that the plaintiff's lumbar disc disease was "worsening" at that time. In February 2009, the plaintiff presented to Dr. Bailes for refills of his medication and complaints of depression. A physical examination was unremarkable. Dr. Bailes diagnosed anxiety, chronic pain, and back pain (Tr. 370-72).

In May 2009, the plaintiff presented to Dr. Bailes for refills of his medication. A physical examination was unremarkable. His current medications included Valium, Zoloft, Lortab, and Chantix. Dr. Bailes noted that the plaintiff had four months of sobriety. He prescribed a rolling walker and shower chair for the plaintiff (Tr. 374-75).

On June 19, 2009, Dr. Bailes provided a statement indicating that he had treated the plaintiff for over three years and that the plaintiff suffered from lumbar degenerative disc disease with significant radicular pain down his legs. As a result of this condition, Dr. Bailes opined that the plaintiff would not be able to walk more than a couple hundred feet when he was at his worst and that he was not able to stand and/or walk for more than an hour or so at a time, even on good days. Dr. Bailes opined that the plaintiff

11

could not perform a job that required standing or walking more than 2 hours out of an 8-hour workday. Dr. Bailes further opined that the plaintiff would definitely need to miss work more than 3 days per month on average due to acute exacerbations of his impairments. He opined that the plaintiff would need to change positions more frequently than once per hour if working a sedentary job. Dr. Bailes also indicated that the plaintiff would have frequent interruptions to his concentration during the workday as a result of his chronic back pain. He also indicated that the plaintiff would have problems with concentration due to his anxiety problems (Tr. 373).

On September 28, 2009, the plaintiff attended a consultative examination performed by Dr. Husam Mourtada. The plaintiff reported that he experienced chronic back pain, which had gotten worse over the last two years and which radiated down his right leg with tingling, numbness, and weakness . The plaintiff rated his pain as a 6 out of 10 on the pain scale, but noted that it waxed and waned at times. Upon physical examination, Dr. Mourtada noted that the plaintiff used a cane to ambulate; he had 4/5 strength in both legs; his straight leg raising test was positive; he had tenderness to palpation and reduced range of motion in his lower back; and his sensation was impaired over his right calf (Tr. 378-79).

Based on his examination, Dr. Mourtada completed a medical source statement on October 20, 2009. He opined that the plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand for a total of 3 hours per 8-hour workday; walk for a total of 3 hours per 8-hour workday; and sit for a total of 4 hours per 8-hour workday. Dr. Mourtada opined that the plaintiff could occasionally use his right foot to operate foot controls. He further opined that the plaintiff could never climb, balance, stoop, kneel, crouch, or crawl (Tr. 383-86). Dr. Mourtada also opined that the plaintiff could never work around unprotected heights, but that he could occasionally be exposed to moving mechanical parts, operating a motor vehicle, extreme temperatures, and vibrations.

12

Dr. Mourtada indicated that he believed that the plaintiff's limitations were first present in 2007 (Tr. 387-88).

At the supplemental administrative hearing in January 2010, the plaintiff testified that he was unable to work due to pain in his lower back and right leg (Tr. 83). The plaintiff testified that his pain symptoms had been getting worse over the years (Tr. 88). The plaintiff testified that he used a cane to ambulate approximately 90 percent of the time (Tr. 84). The plaintiff testified that his doctor recommended that he undergo back surgery, but that he was unable to afford the surgery due to lack of health insurance. The plaintiff further testified that he had difficulties concentrating due to his pain symptoms (Tr. 85). The plaintiff testified that he was only able to stand for 15 minutes before he needed to sit down; that he could only walk for 25 or 30 feet before he needed to stop; and that he was only able to sit for 15 to 20 minutes before he needed to stand up. The plaintiff further testified that he was only able to lift 10 to 15 pounds (Tr. 84).

The ALJ described a hypothetical individual of the plaintiff's age, education, and work experience who was limited to performing a reduced range of light work that did not involve more than frequent balancing, kneeling, crouching, or crawling; that did not involve more than occasional stooping or climbing of stairs or ramps; and that did not any concentrated exposure to hazards or any climbing of ropes, ladders, or scaffolds (Tr. 91). Dr. Charlie Edwards, a vocational expert, testified that such a hypothetical individual would be capable of performing the plaintiff's past relevant work as a car salesman as well as other representative jobs that included mobile home sales (approximately 35,000 in the national economy), telecommunication sales (approximately 50,000 jobs in the national economy), inspector (approximately 35,000 jobs in the national economy), and cashier (approximately 50,000 jobs in the national economy) (Tr. 92-93).

## ANALYSIS

The plaintiff alleges disability commencing April 30, 2007, at which time he was 36 years old. He was 39 years old at the time the ALJ hearing decision was issued. The ALJ found that the plaintiff's degenerative disc disease of the lumbar spine was a severe impairment. The ALJ further determined that prior to June 19, 2009, the plaintiff had the residual functional capacity to perform a limited range of light work. Based on the testimony of the vocational expert, she further found that prior to June 19, 2009, the plaintiff was capable of performing his past relevant work as a car salesman, and based on his transferrable skills, he was able to perform other work such as home sales, telecommunication sales, inspector, and cashier. The ALJ further found that after June 19, 2009, the plaintiff had the residual functional capacity to perform sedentary work except that, due to the effects of chronic pain, he could be expected to miss more than three days of work per month. The ALJ found that beginning on June 19, 2009, there were no jobs that the plaintiff could perform, and thus he was disabled as of that date.

The plaintiff argues that (1) the ALJ's determination of his disability onset date was not based on substantial evidence; (2) the ALJ improperly gave little weight to the medical opinions of Dr. Bailes prior to June 19, 2009; (3) the ALJ failed to give reasons why she discounted part of Dr. Mourtada's opinion that supported a finding disability prior to June 19, 2009; and (4) the ALJ failed to document the application of a Psychiatric Review Technique Form ("PRTF") analysis regarding his mental impairment.

### *Disability Onset Date*

The plaintiff contends that the ALJ was required to call a medical expert to determine his disability onset date in order to comply with Social Security Ruling ("SSR") 83-20. The ruling provides that, in order to determine a claimant's disability onset date, an ALJ should consider the claimant's allegations, work history, and the medical and other evidence concerning impairment severity. SSR 83-20, 1983 WL 31249, at *2. The ruling

further states that "medical evidence serves as the primary element in the onset determination." *Id*. The ruling notes that, in cases where "adequate medical records are not available[,] . . . it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id*. The determination of the disability onset date must have "a legitimate medical basis." *Id*. at *3. SSR 83-20 states that when precise evidence as to the onset date is unavailable,  "at the hearing, the . . . ALJ should call on the services of a medical advisor when onset must be inferred." *Id*.

As the Fourth Circuit has noted, "[t]he Ruling's language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred." *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995). Nevertheless, the Fourth Circuit held that where "evidence of onset is ambiguous the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires." *Id*. (citations omitted). In *Bailey*, the ALJ "[gave] the claimant the benefit of any doubt" and found that she was disabled "at least six months prior to the May 1992 consultative examinations." *Id*. at 78. The court found that the ALJ did not have the discretion to forego consultation with a medical advisor "[i]n the absence of clear evidence documenting the progression of Bailey's condition." *Id*. at 79. The Fourth Circuit held that the ALJ's finding as to the claimant's disability onset date was "wholly arbitrary" and not based upon substantial evidence. *Id*. at 80. The court further stated, "The requirement that, in all but the most plain cases, a medical advisor be consulted prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law – that substantial evidence support an agency's decisions." *Id*. (citation omitted).

In this case, the ALJ cited evidence that the plaintiff's back impairment progressively became worse (Tr. 27-31). The ALJ noted (Tr. 30) that the plaintiff reported that his back pain was only mild and episodic at a neurological consultation in July 2007 (Tr.

269); that Dr. Bailes indicated that the plaintiff's symptoms had worsened in December 2008 (Tr. 371-72); that Dr. Bailes opined that the plaintiff would miss more than three days per month due to his chronic pain symptoms in June 2009 (Tr. 373); and that Dr. Mourtada indicated that the plaintiff had diminished strength in the legs, positive straight leg raising, and loss of sensation and reflexes in September 2009 (Tr. 379). However, the disability onset date determined by the ALJ, June 19, 2009, appears to be based solely on the fact that this was the date Dr. Bailes gave his opinion as to the plaintiff's impairments – as there is no evidence that Dr. Bailes examined the plaintiff on this date. Furthermore, the fact that Dr. Bailes stated in December 2008 that the plaintiff's symptoms were worsening and Dr. Mourtada stated in September 2009 that the plaintiff had diminished strength in the legs, positive straight leg raising, and loss of sensation and reflexes, does not constitute clear evidence that the June 19, 2009, disability onset date is appropriate. The decision to find the plaintiff disabled as of that date appears to be as "wholly arbitrary" as the ALJ's decision in *Bailey*. 68 F.3d at 80.

Based upon the foregoing, upon remand, the ALJ should be instructed to consult a medical advisor in order to render an informed determination regarding the plaintiff's onset date of disability in accordance with SSR 83-20 and *Bailey*.

### Opinion Evidence

The plaintiff argues that the ALJ failed to properly consider the opinions of treating physician Dr. Bailes. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also*

*Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

Dr. Bailes, the plaintiff's treating family practice physician, rendered three separate opinions regarding the plaintiff's back impairment – in July 2008, August 2008, and June 2009 (Tr. 359, 360-61, 373). In July 2008, Dr. Bailes indicated that the plaintiff had severe degenerative disc disease, which he believed would cut back significantly on how much the plaintiff would be able to earn in the foreseeable future (Tr. 359). In August 2008, Dr. Bailes opined that the plaintiff was unable to perform sedentary work on a sustained basis for an 8-hour day, 5-day work week as a result of his degenerative disc disease (Tr. 360-61). At that time, Dr. Bailes opined that the plaintiff could not perform

17

activities that required more than occasional fine manipulation; that he could not stand and/or walk for more than a few minutes during the workday; that he must avoid stooping; that he would have to rest away from the work station for significantly more than hour during the working portion of the day; and that he would probably have to miss more than 3 days of work per month (Tr. 360).  In June 2009, Dr. Bailes opined that, as a result of his degenerative back disease, the plaintiff would not be able to walk more than a couple hundred feet when he was at his worst; that he would not be able to stand or walk for more than two hours out of an 8-hour workday; and that he would need to miss work more than 3 days per month on average (Tr. 373).

Upon considering the evidence of record as a whole, the ALJ determined that Dr. Bailes' first two assessments of the plaintiff's back impairment in July and August 2008 were entitled to little weight but that Dr. Bailes' third assessment in June 2009 was entitled to great weight (Tr. 30).  First, the ALJ considered Dr. Bailes' July 2008 opinion that the plaintiff's severe degenerative disc disease would cut back significantly on how much the plaintiff would be able to earn in the foreseeable future.  The ALJ noted that this was not a clear statement of disability – as a statement that the back condition would impact how much money he might earn in the future is not necessarily inconsistent with a finding that the plaintiff was capable of performing substantial gainful activity in spite of his back condition.  As argued by the Commissioner, a claimant is not entitled to disability benefits simply because his or her future earning potential may be affected by a particular medical condition.  Further, even if it were assumed that Dr. Bailes' statement could be interpreted as suggesting that the plaintiff was unable to perform any substantial gainful activity – the opinion would still not be entitled to any special significance because it is nothing more than an opinion on the ultimate issue of disability, which is reserved to the Commissioner under the regulations. *See* 20 C.F.R. § 404.1527(d).  The ALJ further discounted Dr. Bailes' July 2008 opinion because it was not supported by any analysis or rationale (Tr. 30).  The

18

statement did not provide any explanation as to how or why the plaintiff's back impairment would affect his ability to perform work (i.e., Dr. Bailes did not assess any specific functional limitations), nor did it provide any medical evidence or clinical findings in support of his vague, conclusory opinion (Tr. 359).  Based upon the foregoing, the ALJ reasonably discounted Dr. Bailes' July 2008 statement.

Next, the ALJ considered Dr. Bailes' August 2008 opinion that the plaintiff was unable to perform even sedentary work on a sustained basis due to several extreme functional limitations caused by his degenerative disc disease (Tr. 360-61).  The ALJ noted that Dr. Bailes' August 2008 opinion was not well-supported by the medical evidence of record, which suggested that the plaintiff's symptoms were not disabling as August 2008, but were progressive and did not undergo a significant worsening until December 2008 (Tr. 30).  For example, in May 2008, Dr. Bailes' treatment notes reflect that the plaintiff reported that he did not have any significant problems with limitation of motion, strength, or sensation in his extremities and that his physical examination was largely unremarkable (Tr. 367).  Likewise, in late July 2008, Dr. Bailes' treatment notes reflect that the plaintiff denied having any problems on a review of his systems, except for some allergy problems, and that a physical examination was wholly unremarkable (Tr. 365-66).  Furthermore, in October 2008, Dr. Bailes' treatment notes reflect that the plaintiff's physical examination was largely unremarkable, except for moderately reduced extension and flexion in the plaintiff's back (Tr. 363).  Based upon the foregoing, the ALJ did not err in discounting the August 2008 opinion.

While the undersigned finds that the ALJ did not err in discounting Dr. Bailes' July and August 2008 opinions, this court has recommended that the case be remanded to the ALJ for consultation with a medical advisor in order to determine the plaintiff's onset date of disability.  Upon remand, the ALJ should also be instructed to consider these opinions, as well as the opinions from other medical sources, the plaintiff's allegation of

19

when the disability began, his work history, and the medical evidence in determining the onset date of disability in accordance with SSR 83-20 and *Bailey*.

The plaintiff further argues that the ALJ erred in failing to give reasons why she discounted part of Dr. Mourtada's opinion to the extent that it suggested the plaintiff was disabled prior to June 19, 2009. On September 28, 2009, Dr. Mourtada conducted a consultative medical examination to evaluate the plaintiff's back impairment (Tr. 378-80). Dr. Mourtada reported that he did not have access to any of the plaintiff's prior medical records or diagnostic studies at the time of his examination (Tr. 378). As the ALJ noted (Tr. 30), Dr. Mourtada's physical examination revealed that the plaintiff had diminished strength in the legs, positive straight leg raising, and loss of sensation and reflexes at that time (Tr. 379). Based on his examination, Dr. Mourtada opined that the plaintiff was capable of performing a narrow range of sedentary work (Tr. 384-87). Dr. Mourtada also indicated that he had sufficient information to form an opinion within a reasonable degree of medical probability that the functional limitations that he assessed were first present in 2007 (Tr. 388).

The ALJ noted that her finding that the plaintiff became disabled on June 19, 2009, was supported by Dr. Bailes' June 2009 medical source opinion and by Dr. Mourtada's November 2009 consultative examination, which suggested that the plaintiff's progressive back impairment had reached a disabling level of severity by that point in time (Tr. 30-31). The ALJ did not expressly address Dr. Mourtada's opinion that the plaintiff's assessed functional limitations had been present since 2007.

As discussed above, this court recommends that the case be remanded to the ALJ for consultation with a medical advisor in order to render an informed judgment as to the plaintiff's date of onset of disability. Accordingly, this court further recommends that the ALJ be instructed to also further consider Dr. Mourtada's opinion that the functional

20

limitations he assessed were present since 2007 and to provide the analysis for the weight given to such opinion.

### Psychiatric Review Technique Form

Lastly, the plaintiff argues that the ALJ failed to properly perform the Psychiatric Review Technique Form ("PRTF") analysis, also known as the "special technique," in evaluating his alleged mental impairments. In employing the special technique, the ALJ considers  four broad functional areas in order to evaluate the severity of a claimant's mental impairments: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and episodes of decompensation. 20 C.F.R. § 404.1520a. The ALJ is required to make a specific finding as to the degree of limitation in each of the broad functional areas described above. *Id.* § 404.1520a(e)(4). If the ALJ rates the claimant's degree of limitation as "none" or "mild" in the first three functional areas and "none" in the fourth area, then the regulations indicate that the claimant's mental impairment will generally be deemed to be "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* § 404.1520a(d)(1). At the ALJ hearing level,

> [T]he written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* § 404.1520(e)(4).

In this case, the ALJ found that the plaintiff had mild limitations in activities of daily living; mild limitations in maintaining social functioning; mild limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration (Tr. 28-29). While the plaintiff argues that the "ALJ simply failed to adequately

21

document her application fo the special technique by failing to provide a factual basis from the record for the ratings given" (pl. reply brief 10), the ALJ specifically noted (Tr. 28) that her findings were supported by the complete absence of any mental health treatment and Dr. Massey's clinical observations, which indicated that the plaintiff was polite and cooperative, that he had good social skills, and that he had fully intact memory and concentration (Tr. 337-39). The ALJ further noted (Tr. 28) that her findings were consistent with the October 2007 PRTF by Dr. Price, a non-examining State agency psychologist (Tr. 283-96). The ALJ acknowledged that a State agency psychologist, Dr. Varner, opined in June 2008 that the plaintiff was restricted to simple tasks without public interaction and that Dr. Bailes had completed a checklist questionnaire in February 2008 indicating that the plaintiff's thought processes were slowed and that he had poor memory, attention, and concentration (Tr. 28-29). However, the ALJ found that these assessments were inconsistent with the clinical findings of Dr. Massey, who was a trained mental health clinician who actually examined the plaintiff and made notes of his findings. Thus, the ALJ gave Dr. Massey's opinion greater weight (Tr. 29). Based upon the foregoing, the undersigned finds that the ALJ's assessment was based upon substantial evidence and was without legal error.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g) with a remand of the cause to the Commissioner for further proceedings as discussed above

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 8, 2013
Greenville, South Carolina